## SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# PENOBSCOT.

### JUNE TERM,

### 1827.

---

BAYLIES & ALS. *petitioners, vs.* BUSSEY.

The equitable claims of a tenant in possession under the betterment act, are not affected by a judgment in a petition for partition, even though he has appeared as respondent, and pleaded to the process.

Where a mortgagor and mortgagee joined in making a second mortgage to another person, who entered for condition broken, and afterwards, before the mortgage was foreclosed by the lapse of the three years, executed and tendered to them a deed of release of the premises according to a previous stipulation, which they refused to receive till five years after the time of entry; it was held that the effect of the release was merely to replace the estate in them as they held it before the second mortgage, restoring them to the original relation of mortgagor and mortgagee.

THIS was a petition for partition, preferred at *June* term 1823, by the heirs of *Benjamin Lincoln,* claiming two undivided third parts of certain lands in *Hampden.* The respondent pleaded his own sole seisin of the lands described in the petition, which he claimed as the grantee of *Henry Knox.*

At the trial, before *Weston J.* at the sittings after *June* term 1825, the petitioners gave in evidence an indenture dated *Aug.* 25, 1801, between *Henry Knox, Benjamin Lincoln* and *Henry Jackson,* of the

20

one part, and *Thomas L. Winthrop* of the other part ; by which the lands described in the petition were conveyed to Mr. *Winthrop,* upon condition that if *Knox, Jackson* and *Lincoln,* their heirs or assigns, or any of them, should elect to pay to *Winthrop* $5757.63 on or before *Sept.* 25, 1801, with interest from *March* preceding, the deed should be void.

And it was therein further covenanted that if, within one month after *Sept.* 25, 1804, *Winthrop* should convey the same lands in fee to *Knox, Jackson* and *Lincoln,* they should be bound, jointly and severally, to pay him on demand the same sum of $5757.63, with the interest before mentioned.

The petitioners further gave in evidence a deed duly executed and tendered by *Winthrop* to *Knox, Jackson* and *Lincoln,* Oct. 8, 1804, conveying to them the same lands in fee simple, and expressing his election to make the conveyance and demand the money mentioned in the indenture ; which deed was not then accepted, nor the money paid.

It was further shewn by the petitioners that *Winthrop* entered into the lands *Feb.* 20, 1802, for condition broken; that the money due to him was paid by *Lincoln, April* 30, 1807 ; that *Jackson,* on the 14th of *August* 1807, released to *Lincoln* all his interest and estate in the lands in question ; and that *Winthrop's* deed of reconveyance which had been refused, was accepted in *September* 1807.

On the part of the respondent, it appeared that the whole *Waldo* patent, of which the premises in question were a part, was mortgaged by *Knox* to *Lincoln* and *Jackson,* Oct. 17, 1798, to indemnify them against certain notes of hand which they had indorsed as his sureties, but not including the debt due to *Winthrop.* It also appeared that *Knox* conveyed the lands, of which partition was demanded, to the respondent, in fee, by deed dated *March* 4, 1805, and recorded *May* 6, 1806 ; under which deed he entered, and had ever since remained in possession. *Lincoln* died *May* 8, 1810 ; and there was no evidence of any entry by the petitioners.

It was also proved that *Jackson* and *Lincoln,* by deed dated *July* 5, 1806, assigned and transferred to *Thorndike, Sears* and *Prescott,* the mortgage of *Oct.* 17, 1798 given to them by *Knox,* with all the

Baylies & als. *v.* Bussey.

lands therein described; except such parts thereof as had been sold by *Lincoln* and *Jackson*; who were empowered, by that mortgage, to sell and convey a fee simple estate in such parts of the mortgaged premises as they chose, and apply the proceeds to the payment of any notes which they had indorsed for *Knox*. By this assignment it appeared that *Lincoln* and *Jackson* had not been saved harmless against the notes mentioned in the mortgage. But it did not appear that they had ever conveyed any of the lands, except by their joint deed with *Knox* to *Winthrop*, before mentioned, and the assignment to *Thorndike, Sears* and *Prescott.*

Upon these facts the Judge directed the jury to return a verdict for the petitioners; upon which judgment was to be entered, if, in the opinion of the court, they were seised, as they had alleged in their petition. Otherwise, it was to be set aside.

*Brown*, for the petitioners, contended that the title became absolute in Mr. *Winthrop*, by the lapse of three years after his entry for condition broken in *February* 1802. His subsequent release, of *Oct.* 8, 1804, took effect from its delivery in *September* 1807, and enured to the benefit of *Lincoln*, as to the third part he had purchased of *Jackson*, as well as the other third; thus vesting in him the two third parts, of which partition is sought. When *Knox* conveyed to *Bussey*, in *March* 1805, he had no estate in the land, the whole title being then absolute in *Winthrop*; and therefore the grantee took nothing by that deed, except in the other lands described in it, which *Knox* might lawfully convey. He might then have entered under his deed; but this entry cannot be extended, by relation, beyond his legal rights; certainly not constructively to disseise the ancestor of the petitioners. And as the case does not find that there was any actual disseisin, it follows that they were lawfully seised of the lands described in their petition; and the plea of sole seisin in the respondent is not supported.

*Orr*, and *R. Williams*, for the respondent. It is not necessary to allege a lawful sole seisin, against all the world. The grantee of a disseisor, coming honestly to the estate, is as well entitled to this plea as if he had the whole estate. This mode of remedy was never

intended to apply, except where the fact of tenancy in common is clear; never to settle titles in the abstract, as mere rights; for if so, the plea of sole seisin would be wholly taken away.

The conveyance from *Knox*, *Jackson* and *Lincoln*, to *Winthrop*, was to be a mortgage or not, as the latter should elect. His election was shewn by his reconveyance of *Oct*. 8, 1804, which was intended to extinguish it, as a mortgage. In consequence of this election to treat it as a mortgage, the conveyance to the respondent might well operate as an assignment of the right in equity of redemption. Nor was the mortgage to *Winthrop* ever foreclosed; for though he entered in 1802, yet in 1804 he renounces all his claim to the land, electing to receive the money, and to rely on the personal security of the debtors. By this deed the parties were rescised of their prior estates; *Knox* as mortgagor, and *Lincoln* and *Jackson* as mortgagees; and the interest of the latter could never descend to their heirs, unless foreclosed. *Smith v. Dyer* 16. *Mass.* 18. The deed from *Jackson* to *Lincoln* in 1807, conveyed nothing, because the grantor and grantee were disseised by *Bussey*. Without an actual seisin in the petitioners, this process cannot be maintained. *Bonner v. The Proprietors of the Kennebec purchase* 7. *Mass.* 475. At least, the peculiar provisions of our statute, called the betterment act, require that such seisin shall have been continued till within six years next before the filing of the petition; since otherwise the respondent must lose the value of his improvements made on the land.

The argument was had at *June* term 1826; and the cause being continued under advisement, the opinion of the Court was delivered at the *June* term in this year, in *Hancock*, by

MELLEN C. J. This case presents several facts and questions of law, which have been argued by counsel; and, though not necessary to a decision on the motion for a new trial, still we have examined them all, and shall deliver our opinion upon all, as the course most useful for the parties.

The first fact in point of time is, that *Henry Knox*, being seised of a large tract of land, called the *Waldo* patent, of which the premises described in the petition, are a part, on the 17th of *Octo-*

Baylies & als. *v.* Bussey.

*ber* 1798, mortgaged the same to *Benjamin Lincoln* and *Henry Jackson* to indemnify and save them harmless from certain liabilities assumed by them as his sureties.

On the 4th of *March* 1805, *Knox* conveyed the lands which are described in the petition, to *Bussey*, the respondent, in fee simple; who thereupon entered and has ever since continued in possession of the same. His deed was registered *May* 6th 1806. The petition in the present case was presented in *June* 1823.

Before we state any more of the facts contained in the report, we shall examine and dispose of two objections of a preliminary character which have been urged by the counsel for the respondent.

It is contended that upon the facts stated, the petitioners cannot maintain this process, inasmuch as it appears that they were not actually seised of the premises whereof partition is prayed, at the time the process was commenced; but that, on the contrary, the report shews that they and their ancestor, *Benjamin Lincoln,* have been disseised ever since the year 1805. In support of this position they have cited the case of *Bonner v. The Proprietors of the Kennebec purchase* 7. *Mass.* 475. In that case, the petitioner had been disseised for about forty years; and the court observed, when speaking of the facts of that case, and giving their opinion, that a petitioner must be actually seised, in order to maintain a petition for partition. From the decision of the same court in a subsequent cause, it would seem that the generality of the language of the court in the case of *Bonner v. The Proprietors of the Kennebec purchase,* must be restricted to the facts of that case; because in *Wells v. Prince* 9. *Mass.* 508, the court expressly decided that if a petitioner for partition had a right of entry, at the time of presenting his petition, he could well maintain the process for the proportion of the estate to which he was legally entitled; and the same principle is stated in *Barnard v. Pope* 14. *Mass.* 434. See also 4. *Dane's Abr. ch.* 132. *art.* 8. *sect.* 12. In the case before us, even if *Bussey's* possession was of such a nature as to constitute a disseisin, (as to which we give no opinion) still the petitioner's right of entry was not taken away when the petition was filed. Considering, therefore, that such was the acknowl-

edged law of Massachusetts, at the time of our separation from that Commonwealth, no sound reason can be given why this court should adopt a different principle, unless some of the provisions of our statute entitled an "act for the settlement of certain equitable claims arising in real actions," furnish solid grounds for distinction. It has been contended that they do; that they go farther than the statutes of Massachusetts on this subject, and have more carefully guarded these "equitable claims" from violation or danger; and the court is called upon so to modify and regulate this process of partition, as in no degree to endanger or impair them. In other words, it is contended, that no p' '  ı for partition ought to be sustained in those cases where the pr( ..ıses have been in the actual possession and improvement of one or more persons, for more than six years next before the commencement of the process. We have examined this argument with care and attention; and will now proceed to give our reasons for not considering it as well founded.

The act before mentioned has relation only to real actions brought for the recovery of lands; that is, to writs of right and writs of entry; not to writs of partition at common law, or petitions for partition pursuant to the directions of our statute; and we apprehend that it would be a species of judicial legislation, if we should undertake to extend the various provisions of the act to processes of the latter kind, in which it seems impossible to apply those provisions to any good purpose. Nor do we feel at liberty to change those principles of law, which we have before stated, by which a tenant in common may maintain his petition for partition, if he has a right of entry, though not actually seised, and reduce the limitation of his right to make use of this species of process, from twenty years to six years. Besides, the establishment of such a principle, if in our power, is not necessary to guard the equitable rights of those for whose use and benefit the betterment law, so called, was enacted. The best mode of illustrating the subject, and rendering our meaning perfectly intelligible, is, by stating one or two cases by way of example. Suppose A and B are tenants in common of a lot of land; and that S has been in the exclusive possession and improvement of it for fifteen years. In this case, a petition for partition lies, and S is enti-

tled to the estimation and benefit of the valuable improvements made by him on the land. Suppose A brings his petition for partition, and gives due notice to B, and to S, the man in possession. Now, in the case put, S has no kind of interest in the question how the land shall be divided between A and B ; and as his possession has continued only fifteen years, he could not bar the petition by a plea of sole seisin ; in fact, he has no interest in the cause, if the judgment of partition does not destroy or impair his equitable claims and possessory rights, under the betterment law. So if A and B are tenants in common, and B has held the whole lot for fifteen years adversely, and excluded A ; still A may maintain his petition for partition against B, who has made valuable improvements on the land. Now in this case, as B cannot defend himself on the plea of sole seisin, he has no interest in the cause, except as tenant in common ; and as to the fairness of the division, if the judgment in partition does not destroy or impair his equitable claims and rights under the law, will such judgment destroy, impair or jeopard them in either of the cases above stated ? If not, then the argument of the respondent's counsel, in the case at bar, falls to the ground. The case of *Motley & als. v. Blake*, 12. *Mass.* 280, is stronger than this, as it regards the legal effects of such a judgment. The heirs of *John Motley* petitioned for partition of the real estate of which he died seised ; and his widow, who was entitled to have her dower assigned to her in the premises, appeared as respondent, and opposed the partition on that ground. The court in giving their opinion, say—" it is apparent she has no interest in the question, nor any right to interfere in this suit, or to object to the partition which is prayed for." Yet she had a legal right of dower ; and not merely an equitable claim. It is well known that in cases of partition, no precept ever issues in the nature of an execution to put the petitioner into possession of the part assigned to him. The final judgment is considered as placing each one in possession of the part so assigned, and as giving him a several seisin ; and on such seisin the assignee may maintain his writ of entry ; and the judgment establishing the partition completely bars the legal possessory title of the respondent, and of all others who might have become respondents. *Cook v. Allen*, 2. *Mass.* 462.

Now let us suppose that S, in the case first put, and B in the other case, both refuse to surrender the actual possession, and quit the premises ; in such circumstances, the remedy of A is a writ of entry against each, to amove him.   In such an action, what principle of law forbids the application of the equitable provisions of the betterment act?   The object of the petition for partition was, and always is, to effect a division of the legal estate between or among those who own it.   The statute does not profess to interfere with any rights or claims of an equitable character, in making the partition.   And the judgment in partition is considered as *instanter* putting an end to the legal  possessory title, and also to the seisin and possession of the respondent, in common and ordinary cases, and as transferring such seisin to the petitioner in the part assigned him, and clothing him with the rights before mentioned.   But it does not by any means follow, that it put an end to all, or to any, of the defendant's claims under the betterment law ; more especially when, by such a construction, equities would be displaced and destroyed, and the anticipated relief, provided for him by the legislature, be forever removed from his reach.   By adopting, as we do, the more favorable principle of construction, and supporting the distinction above stated, we are advancing the cause of justice, and protecting those peculiar interests, which it was the object of the act to secure to their owners.   Besides, this construction is in perfect accordance with the spirit of that provision contained in the 5th section of the act in question, by which the true owner of land is rendered liable to pay to the person in possession and entitled to betterments, the full amount of their value, in case such owner should enter and amove him from the land.   This provision clearly proves that the actual seisin and possession, though regained by the owner, are not incompatible with the equitable claims of the man entitled to them. In fact, these equitable interests are of such a peculiar character, and so perfectly unknown to the common law, that its rules and principles are not applicable to them.   Certain are we, however, that in giving this construction, though we protect these interests from all danger, we do not, in so doing, violate any legal principle, or in any manner impair any legal titles.   The objections, therefore, to the nature of the process before us, are not sustained.

Baylies & als. *v.* Bussey.

We now proceed to an examination of the more important facts in the cause. And here we would again advert to the first fact stated in this opinion, and we do it for the sake of clearness. On the 17th of *October* 1798, *Knox* mortgaged the *Waldo* patent, including the premises in question, to *Lincoln* and *Jackson* in fee. For the present we pass by the mortgage to *Winthrop*, and the reconveyance from him; but shall notice them both in the sequel. On the 5th of *July*, 1806, *Jackson* and *Lincoln* assigned and transferred to *Thorndike*, *Sears* and *Prescott* the mortgage of *October* 17, 1798, given by *Knox*, with all the lands therein described, except such parts thereof as had been sold by *Lincoln* and *Jackson*, who were empowered by the mortgage deed to sell and give a fee simple estate of such parts of the lands described in the mortgage, as they chose, and apply the proceeds to the discharge of the notes which they had endorsed for *Knox*. By this assignment it appears that *Lincoln* and *Jackson* had not been saved harmless. Here we must inquire whether the lands described in the petition passed by the assignment to, and vested in *Thorndike*, *Sears* and *Prescott*; or whether they are embraced within the exception. The exception relates only to land sold; and the report states that it did not appear that there had been any conveyance of any of the lands, except the mortgage deed made by *Knox*, *Lincoln* and *Jackson*, to which we have alluded. Neither does it appear that there had not been any other. Unless some parts of the land had been sold, under the power given in *Knox's* mortgage deed, the exception would seem to be useless and unmeaning. It could not have been intended to embrace the mortgage to *Winthrop*; for that was not a sale; it was not made under the power from *Knox*; but was a mere mortgage, made by *Knox*, as well as by *Lincoln* and *Jackson*; all three joining in the deed. From this view of the assignment of the mortgage of *Oct.* 17, 1798, it is evident that the legal estate in the premises in question is now in *Thorndike*, *Prescott* and the heirs of *Sears*, and not in the petitioners; unless the transaction between *Knox*, *Lincoln* and *Jackson*, on the one part, and *Winthrop* on the other, and the deed of mortgage to *Winthrop* and his deed of reconveyance, to which we have several times referred, lead us to a

different conclusion. It therefore remains for us carefully to examine those conveyances, and ascertain their object and legal effect.

On the 25th of *August* 1801, about three years after *Knox* had mortgaged the *Waldo* patent to *Lincoln* and *Jackson*, they all three joined in a mortgage of the lands described in the petition, being only a part of the *Waldo* patent, to *Thomas L. Winthrop*. Their deed passed the whole estate in the lands therein described to *Winthrop*; *Knox* thereby conveying his right in equity, and *Lincoln* and *Jackson* the fee, which they held as mortgagees. On the 8th of *October* 1804, *Winthrop*, preferring to release the estate so conveyed to him as security, and rely on the personal obligation of *Knox, Lincoln* and *Jackson*, as he had a right to do by the terms of the indenture of *August* 25, 1801, made his deed of reconveyance to them; and on the day of its date tendered the same to *Knox, Lincoln* and *Jackson*, and demanded the money due on their covenants in the above mentioned indenture. The deed of reconveyance, for some reason or other, was not then accepted; but afterwards was delivered to them in *September* 1807. By reference to the indenture and to the facts as reported, the legal operation of *Winthrop's* deed to them must be considered to be that of replacing the estate in them as they held it prior to the conveyance to him in mortgage; that is, *Knox* as mortgagor owned the equity of redemption, and *Lincoln* and *Jackson*, as mortgagees, owned the fee. Such must have been the intention of all concerned; for it can never be presumed that *Lincoln* and *Jackson* intended that their title as mortgagees under *Knox's* deed of Oct. 17, 1798, to the lands in question should be lost or impaired in any degree by the reconveyance from *Winthrop*; it was merely an extinguishment of his rights as mortgagee.

But it appears that the assignment of the mortgage of 1798 was made and executed in *July* 1806, which was about ten months prior to the time when *Winthrop's* reconveyance was delivered, viz. *September* 1807; and the last question is whether this circumstance has any effect in defeating the intentions of *Lincoln* and *Jackson*, as expressed in their deed of assignment to *Thorndike, Sears* and *Prescott*. The answer to this question is, that at the time of the conveyance in mortgage to *Winthrop*, the fee of the lands was in *Lincoln*

Baylies & als. *v.* Bussey.

and *Jackson* as mortgagees of *Knox*; and this new incumbrance, created by the conveyance to *Winthrop*, though continuing at the time of the assignment, did not prevent the operation of it to pass the estate to the assignees, who were strangers, subject to the mortgage to *Winthrop*, as well as to the right of redemption by *Knox*; for it is a well known principle, that in respect to strangers or third persons, the mortgagor is considered as owner of the fee; though as between mortgagor and mortgagee, the fee is considered to be in the latter. Therefore when *Winthrop* delivered his deed of reconveyance or release in *September* 1807, the incumbrance of his conditional and temporary title was thereby removed, and the estate remained in *Thorndike*, *Sears* and *Prescott*, subject only to *Knox's* right of redemption, as it was before the conveyance to *Winthrop*, and neither *Knox* or his representatives have ever redeemed the estate or imdemnified the mortgagees. Under these circumstances, and by the application of the legal principles above stated, it appears that long before the present petition was filed, the fee of the premises, whereof partition is prayed, had been conveyed to and was vested in *Thorndike*, *Sears* and *Prescott*; and thus the petitioners, who assert no claim, except what is alleged to be derived from *Lincoln* and *Jackson*, have no title to maintain this process. We have thus examined all the points made in the argument, and given our opinion on each; and the conclusion from this investigation is, that the verdict must be set aside and a new trial granted, according to the terms of the report. The petitioners, however, will judge whether a new trial can be of any use to them.

*Verdict set aside.*