STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                                   DOCKET NO. BCD-CV-2018-01

PETER RITTMASTER, et al.,              )
                                       )
          Plaintiffs,                  )
                                       )
     v.                                )          JUDGMENT
                                       )
HARRY L. REISTER,                      )
                                       )
          Defendant.                   )

This matter came before the Court for bench trial on August 13, 2018. The parties before

the Court are Plaintiffs Peter Rittmaster and Shawn Tyler and Defendant Harry Reister. Service

has been properly effectuated on the Defendant. Plaintiffs are represented by Nicholas Walsh, Esq.

and Defendant is represented by Ernest Babcock, Esq. and Micah Smart, Esq.

## PROCEDURAL HISTORY

Plaintiffs filed their initial complaint in this matter in Kennebec County Superior Court on

July 13, 2017 seeking, inter alia, a declaratory judgment that the watercraft in question, a 1970

Bertram Baron 28 (the "Bertram") that they had purchased at an online auction, belonged to them.

This was in response to the Maine State Police seizing and impounding the vessel three days

earlier. Plaintiffs thereafter filed their operative pleading in this matter, their first amended

complaint (the "Complaint") in Kennebec County Superior Court on October 24, 2017. This Court

accepted transfer upon application of Defendant Mr. Reister on January 5, 2018.

Mr. Reister's motion to stay the proceedings was pending at the time of transfer. Mr.

Reister thereafter filed a motion to compel turnover of the Bertram. The motion to stay was to

allow Mr. Reister time and opportunity to file a lawsuit in Michigan to determine ownership of the

1

Bertram; this Court denied that motion on March 23, 2018. The motion to compel turnover was granted on May 29, 2018 by agreement of the parties.

On May 3, 2018, the Court entered a final pretrial order scheduling the matter for trial on August 13, 2018. The trial was held on August 13, 2018 and the Court heard oral argument after the close of each party's case. Each side thereafter filed a post-trial brief. The matter is now ready for judgment.

## FACTS

Plaintiffs/ Counterclaim Defendants Peter Rittmaster and Shawn Tyler (hereafter "Plaintiffs") are partners and friends who share a love of powerboating and boat restoration. Mr. Tyler, who testified at trial, said that the partnership has restored approximately six boats. Defendant/ Counterclaim Plaintiff Harry Reister, also a boating enthusiast, is a resident of Grosse Point, Michigan, and has owned the Bertram since he bought it new in 1970.

In 2006, Mr. Reister contracted with a company called Mirror Image to tow the Bertram to a marina for repairs after a fire damaged it while it was in storage. Mirror Image brought the boat to an undisclosed location for purported non-payment and demanded a significantly higher fee than what Mr. Reister had agreed to before it would release the boat. Mr. Reister was unable to negotiate the Bertram's release; at that point, he involved law enforcement and reported the boat stolen. Mr. Reister testified that the Macomb County Sheriff's Department refused or was unable to help him recover the Bertram. Over the following years, Mr. Reister searched for his boat, even going personally to local boatyards, but was unable to find it.

As Mr. Reister later learned, the Bertram had been transported to and was being held by a marina named Blue Lagoon. However, in September 2009, Blue Lagoon foreclosed on a storage lien on the Bertram without giving Mr. Reister proper notice, sold the Bertram to itself at auction,

2

and applied for and received a certificate of title from the Michigan Secretary of State.[1] In January 2012, Mr. Reister found photographs of the Bertram posted on the website offshoreonly.com by someone in Maine using the username "captaintyler." Mr. Reister contacted the website and the Maine State Police to report the stolen boat.

Meanwhile, in 2010, Mr. Tyler was himself searching for a vessel like the Bertram for purchase. Mr. Rittmaster, who is thirty-five years Mr. Tyler's senior, is the former president of Bertram Yachts and designed the thirty-one-foot racing boat on which the Bertram Baron 28, a consumer model, was based. Mr. Tyler found the Bertram on eBay, an online auction service, in 2010. Mr. Tyler submitted the winning bid for the Bertram. Thereafter on October 6, 2010, Mr. Rittmaster purchased from Raymond Genick the Bertram and a trailer for a total of $6,000. (Pl's Ex. 6.) Mr. Genick provided Mr. Tyler with a Watercraft Certificate of Title issued by the Michigan Secretary of State showing that David Klicki/ Blue Lagoon Marina of Harrison Township, Michigan had signed title of the Bertram over to Mr. Genick. (Pl's Exs. 8-9.) Mr. Tyler arranged for transportation of the boat from Michigan to his home in Winthrop, Maine, where he placed it in his garage and proceeded with the restoration. (*See* Pl's Ex. 7.) Over approximately the following two years, Plaintiffs spent $32,380 and 650 hours restoring the Bertram from derelict to award-winning status—the Bertram won first place at the 2013 Lake Winnipesaukee Antique and Classic Boat show in 2013. (Pl's Exs. 2-3, 7.) After 2013, Mr. Tyler moved the Bertram into storage because in his words it is "not a lake boat." Plaintiffs paid Mr. Tyler's brother, Ian Tyler, $17,400 for his labor on the Bertram and valued Mr. Tyler's own labor at $21,600 for a total project cost of $71,380. (Pl's Ex. 7.)

---

[1] The Court takes judicial notice that Michigan is a "title state," meaning the secretary of state issues certificates of title for watercraft, and that Maine is a "registry state," where most motorized watercraft must be registered with the Department of Inland Fisheries and Wildlife, but the Secretary of State does not issue certificates of title for watercraft. M.R. Evid. 201(b)(2),(c). Mr. Rittmaster registered the Bertram in Maine in his name.

3

On January 19, 2012, Officer Paul Ferland of the Winthrop Police Department, who was investigating a case referred by the Maine State Police, went to Mr. Tyler's residence and learned that he was at work and not at home. Officer Ferland called Mr. Tyler on the telephone and told Mr. Tyler that the Bertram may have been stolen. Mr. Tyler cooperated with Officer Ferland and gave him permission to go into the garage and look at the Bertram to determine whether it was the same boat that had been reported stolen, telling him where he could locate the hull number. Mr. Tyler told Officer Ferland that he had purchased the Bertram on eBay in the Fall of 2010 and agreed to speak with Officer Ferland again the next day. On January 20, 2012, Mr. Tyler explained how and when he had come into possession of the Bertram in more detail and showed him the bill of sale and Michigan certificate of title. Mr. Tyler assisted Officer Ferland in his investigation, calling Mr. Genick to ask who he had purchased the Bertram from and passing this information along to Officer Ferland. This was when Mr. Tyler first became aware that someone had reported the Bertram stolen and there was a competing claim of ownership. (Def's Ex. 16.) Officer Ferland told Mr. Tyler it was a civil matter. Mr. Tyler did not ask who had reported the Bertram stolen. (Def's Ex. 16.)

Officer Ferland contacted Mr. Reister at that time and reported that they had found the Bertram but could not pursue it as a criminal matter because the boat was not listed on the National Crime Information Center ("NCIC"). Officer Ferland did not provide Mr. Reister with a name, address, or any other details about who was in possession of the Bertram.

Some months later, Mr. Reister directed his attorney to order a title report on the Bertram, discovered that Blue Lagoon had been issued a certificate of title, and his attorney thereafter filed a multi-count suit in the Macomb County Circuit Court (Michigan) on June 18, 2012, against Mirror Image, Blue Lagoon, "John Doe" of Maine, and others, seeking damages and requesting

4

that the certificate of title of the Bertram be reinstated to Mr. Reister's name. (Pl's Ex. 4.) That Michigan litigation concluded on February 14, 2013 with the entry of a stipulated judgment (the "Michigan Judgment") that reinstated title to Mr. Reister and ordered the Michigan Secretary of State to issue him a new certificate of title. (Pl's Ex. 4.) Although "John Doe" was a nominal defendant, neither Plaintiff was listed by name or joined in that action.

Although Mr. Reister now held title to the Bertram, the fact that the boat was not listed on the NCIC still prevented Maine law enforcement from getting involved. Mr. Reister complained to U.S. Senator Gary Peters of Michigan in 2016 or 2017; shortly thereafter, the Bertram got listed on the NCIC. Mr. Reister again contacted Maine State Police, who seized the boat and had it towed to a then-unknown storage yard on July 10, 2017, where it has remained ever since. (Def's Ex. 18.) Plaintiffs then filed their initial complaint on July 13, 2017, giving rise to the instant lawsuit.

## ANALYSIS

I.      Plaintiffs' Complaint

     a.  Statutory Entitlement to Betterments

Plaintiffs' first count is brought under 14 M.R.S. § 6956, which provides as follows:

> When the demanded premises have been in the actual possession of the defendant or of those under whom he claims for 6 successive years or more before commencement of the action, such defendant shall be allowed a compensation for the value of any buildings and improvements on the premises made by him or by those under him whom he claims, to be ascertained and adjusted as provided.

At trial, Plaintiffs proved by a preponderance of the evidence that they have been in possession of the Bertram since on or about October 6, 2010 and that they made significant improvements to the Bertram over the course of approximately two years. (Pl's Exs. 3, 6, 7.)

5

However, satisfying these two elements does not entitle Plaintiffs to recovery because watercraft are not within the scope of 14 M.R.S. § 6956.

In applying a statute, Maine courts first look to the plain language of the provision to determine its meaning. *SAD 3 Educ. Ass'n v. RSU 3 Bd. of Dirs.*, 2018 ME 29, ¶ 14, 180 A.3d 125. If the language is unambiguous, the court interprets the provision according to its unambiguous meaning unless the result is illogical or absurd. *Id.* Language is ambiguous if it is susceptible to different meanings. *Id.* Otherwise, the court accords words their plain, ordinary meaning. *S. Portland Police Patrol Ass'n v. City of S. Portland*, 2006 ME 55, ¶ 5, 896 A.2d 960.

The plain language of section 6956 limits its scope to "premises." The plain, ordinary meaning of premises is a house or building and the surrounding land. *See Black's Law Dictionary* 588 (4th Pocket Ed. 2011) ("3. A house or building along with its grounds"). Even the most expansive definition of the word cannot encompass watercraft. Plaintiffs do not direct the Court to any authority which has broadened the scope of section 6956 to apply to anything other than real property; all of the cases applying the statute going back well over a century have limited the doctrine to improvements of real property. *See, e.g., State v. Kelly*, 606 A.2d 786 (Me. 1992); *United States v. Burrill*, 107 Me. 382, 78 A. 568 (1910); *Pratt v. Churchill*, 42 Me. 471 (1856).

The Court therefore concludes that Plaintiffs are unable to recover the value of the improvements made to the Bertram under 14 M.R.S. § 6956. Judgment will be entered for Mr. Reister on Count I of the Complaint.

b. Title by Equitable Estoppel

The parties have stipulated that Mr. Reister currently holds legal title to the Bertram. (Joint Final Pretrial Statement.) However, Plaintiffs argue that Mr. Reister is equitably estopped from asserting his title to the Bertram. "Equitable estoppel precludes an owner from asserting his legal

6

title when, by his own action or inaction, he has caused another person to act or to alter her position to her detriment." *Littlefield v. Adler*, 676 A.2d 940, 942 (Me. 1996) (citing *Milliken v. Buswell*, 313 A.2d 111, 119 (Me. 1973)). Silence can be sufficient to support the application of equitable estoppel, provided that (1) the owner's silence in fact misled the other party and (2) the owner had a duty to speak, *e.g.* when the party in possession or a third party inquires of him as to his claim over the property. *Littlefield*, 676 A.2d at 942. However, equitable estoppel based on an owner's silence may only be applied if the plaintiff proves by clear and convincing evidence that the owner was silent when he had a duty to speak. *Id.* (citing *Boston & Maine R.R. v. Hannaford Bros. Co., et al.,* 144 Me. 306, 314, 68 A.2d 1, 6 (1949)). "When clear and convincing evidence is required, plaintiffs bear the burden of persuasion to place in the ultimate factfinder an abiding conviction that the truth of their factual contentions are highly probable." *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 26, 818 A.2d 995 (quotation omitted). "Equitable estoppel should be carefully and sparingly applied." *Littlefield*, 676 A.2d at 942 (quotation omitted).

In *Littlefield*, our Law Court affirmed the trial court's refusal to apply the doctrine of equitable estoppel to bar an assertion of superior title on facts that even more strongly implied a duty to speak. In that case, the defendants' predecessors in interest owned a house with a porch that extended forty feet into a right of way held by the plaintiff's predecessor in interest at the time of the conveyance of the former parcel. *Id.* at 941. The defendants made minor improvements to the porch by enclosing it, and also placed a stone wall and garden in the right of way. *Id.* Thirty years later, plaintiff for the first time sought to enforce his right of way and demanded the defendants remove the porch and garden. *Id.* The trial court declined to conclude that the plaintiff was equitably estopped from enforcing his right of way, notwithstanding the fact that the plaintiff

7

and his predecessor in interest never objected to the porch for three decades and the defendants made improvements to the porch, planted the garden, and built the stone wall in apparent reliance on that silence. *Id.* at 942. The Law Court held that these facts "[did] not establish by clear and convincing evidence that [the plaintiff] had a duty to object when [the defendant] made the improvements to her property." *Id.* at 943.

Here, Plaintiffs argue that Mr. Reister (or his attorney) knew that Plaintiffs (or at least Mr. Tyler) had the Bertram as of February 2, 2012 at the latest because that is when the Maine State Police officer contacted him to inform him that he had found the Bertram. However, the officer's report does not say whether he told Mr. Reister who had the boat or even where in particular it was located, only that he passed "this info" onto him; Mr. Reister testified that he was not given any of this information. (Pl's Ex. 4.) The Court finds that Officer Ferland did not tell Mr. Reister who had the Bertram or where it was located with any specificity. By contrast, in *Littlefield*, it was undisputed that the plaintiff and his predecessor in interest were aware for many years that the defendants' porch and improvements were in the plaintiff's right of way, and our Law Court nonetheless held that this did not establish by clear and convincing evidence that the plaintiff had a duty to object. *See Littlefield*, 676 A.2d at 941-42. To conclude otherwise here would be inconsistent with that holding.

Furthermore, Mr. Tyler admits that he made no attempts to find out who was asserting ownership over the Bertram when the Maine State Police first interviewed him in 2012. This is not to suggest that Mr. Tyler was obligated to do so, but it does establish that he could not have made any inquiries of Mr. Reister as to his claim of ownership. Had Mr. Tyler made such an inquiry, Mr. Reister would have had a duty to respond. *See Longley v. Knapp*, 1998 ME 142, ¶ 12, 713 A.2d 939 (party has a duty to speak "where inquiries are made of him").

8

In sum, the Court concludes that on the facts presented Mr. Reister is not equitably estopped from asserting title over the Bertram. Plaintiffs have not established by clear and convincing evidence that Mr. Reister was silent where he had a duty to speak. Judgment will be entered for Mr. Reister on Count II of Plaintiffs' Complaint.

c. Equitable Entitlement to Betterments

Plaintiffs argue that under the facts presented at trial, Mr. Reister is equitably estopped from repossessing the Bertram until he has compensated Plaintiffs for their improvements thereto. In their Complaint, Plaintiffs plead this count as "equitable entitlement to betterments." However, Plaintiffs do not cite any authority recognizing "equitable entitlement to betterments" as a cause of action under Maine law. *Cf. Downer v. Kelley*, No. CV-78-421, 1984 Me. Super. LEXIS 161 (Sept. 28, 1984).

Mr. Reister cites three Maine Supreme Judicial Court opinions of ancient vintage that recognized equitable entitlement to betterments where the plaintiff's statutory claim had failed. *See Austin v. Stevens*, 24 Me. 520, 525 (1845); *Lombard v. Ruggles*, 9 Me. 62, 65-66 (1832); *Baylies v. Bussey*, 5 Me. 153, 159-60 (1827). Mr. Reister cites these cases for the proposition that equitable entitlement to betterments is limited to cases where improvements have been made to real property (as opposed to personal property, *accord* 14 M.R.S. § 6956). These cases indeed all deal with real property exclusively. The Court has likewise been unable to find any cases in Maine holding that a party is equitably entitled to betterments for improvement to personal property. *See, e.g., Chapman v. Butler*, 22 Me. 191 (1842); *Downer*, No. CV-78-421, 1984 Me. Super. LEXIS 161;[2] *Bright v. Boyd*, 4 F. Cas. 127 (C.C.D. Me. 1841).

---

[2] In *Downer*, the Court refers to the defendants' counterclaim count variously as an "equitable claim[ ] for betterments" and "*equitable* recovery for unjust enrichment." *Id.* at *1, 5 (emphasis in original). It is unclear how the defendants labeled the counterclaim count in that case. Recovery for unjust enrichment is not limited to real property. Here, however, the Court cannot analyze the Plaintiffs' claim under an unjust enrichment theory. Not only was it never "set

9

The Court thus concludes that to the extent Maine recognizes equitable entitlement to betterments as a cause of action, recovery is limited to cases where the plaintiff has made improvements to real property. Judgement will be entered for Mr. Reister on Count III of the Plaintiffs' Complaint.

### d. Preliminary Injunction

When Plaintiffs filed their Complaint, they requested a preliminary injunction enjoining the removal of the Bertram from the State of Maine until the court decided who owned the boat and whether Plaintiffs were entitled to recover the value of their improvements thereto. This count is now moot for multiple reasons. *See McGettigan v. Town of Freeport*, 2012 ME 28, ¶ 10, 39 A.3d 48 (quoting *Anthem Health Plans of Me., Inc. v. Super't of Ins.*, 2011 ME 48, ¶ 5, 18 A.3d 824) ("An issue is moot when 'there is no real and substantial controversy, admitting of specific relief through a judgment of conclusive character.'"). The Court's order on Defendant's motion to compel turnover dated May 29, 2018 (the "Turnover Order") granting Mr. Reister the right to possess the Bertram reflects the subsequent agreement of the parties that Mr. Reister could take the boat to another location, including out of state, at his expense. Furthermore, the parties have since stipulated that Mr. Reister holds legal title to the Bertram and this Judgment resolves the issue of Plaintiffs' entitlement to betterments. These were the two conditions on which Plaintiffs' request for a preliminary injunction was premised. Finally, the Court has not yet ruled formally on the Plaintiffs' motion for temporary restraining order dated March 6, 2018, although the Turnover Order functionally mooted that motion as well. To dispel any doubt and tie up any loose ends, the

out with clarity in any pretrial memorandum . . . or report of conference of counsel," *see Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 15 n.3, 722 A.2d 1269, but Plaintiffs implicitly abandoned any claim for unjust enrichment when they amended their complaint. Prior to amendment, Plaintiffs explicitly pled unjust enrichment whereas the amended complaint refers only to "equitable entitlement to betterments."

10

Court hereby DISMISSES Plaintiffs' claim for preliminary injunction and motion for temporary restraining order as moot.

## II. Mr. Reister's Counterclaim

### a. Negligence

Mr. Reister's first Counterclaim count alleges negligence on the part of Plaintiffs. Specifically, Mr. Reister alleges that Plaintiffs owed a duty to him because they were in possession of his property, that they breached that duty by altering his property, and that he suffered damages as a result. (Def's Countercl. ¶¶ 7-9.) While Plaintiffs did not address this Counterclaim count directly at trial or in argument, their counts for betterments and title by equitable estoppel indirectly challenge the allegation that their alterations caused Mr. Reister damages or that they owed him any duty as persons in possession of Mr. Reister's boat, respectively.

As Counterclaim Plaintiff, Mr. Reister bears both the burden of proof and the burden of persuasion on this count; however, Mr. Reister presents no authority or argument for why the facts presented at trial could support a conclusion that Plaintiffs are liable to him in negligence. As pled in the Counterclaim, Mr. Reister seems to suggest a "strict liability" theory of negligence, alleging that "Plaintiffs owed a duty to Defendant as parties in possession of his property." (Def's Countercl. ¶ 7.) Plaintiffs deny this allegation in their answer to the Counterclaim.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. Whether a defendant owes a duty of care to a plaintiff is a question of law. *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 11, 738 A.2d 839 (citations omitted).

The Court declines to conclude that Plaintiffs owed a duty to Mr. Reister under the facts established at trial. When Plaintiffs purchased the Bertram in 2010 there were no circumstances to

11

suggest a competing claim of ownership; Mr. Reister was therefore an "unforeseeable plaintiff." *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 263 (Me. 1988) (*Scolnik, J.*, dissenting) ("Concededly, no legal duty is owed to an unforeseeable plaintiff.") (citing *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99, 99-100 (1928)). Plaintiffs admit that they became aware of Mr. Reister's claim to the Bertram when Officer Ferland visited Mr. Tyler in January 2012. (Def's Ex. 16.) However, Mr. Reister does not bring to the Court's attention any authority that imposes a duty based merely on knowledge of a competing claim of ownership and the Court concludes there was no duty here.[3]

In conclusion, judgment will be entered for Plaintiffs on Count I of Defendant's Counterclaim.

### b. Conversion

In Count II of his Counterclaim, Mr. Reister alleges that he now holds legal title to the Bertram; that he had a right to possess the Bertram while it was in Plaintiffs' possession; that Plaintiffs' possession invaded his right of possession, amounting to conversion; and that he has suffered damages as a result of Plaintiffs' conversion. (Def's Countercl. ¶¶ 11-17.)

"The necessary elements to establish a claim for conversion are a showing that (1) the person claiming that his or her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder." *Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 14, 157 A.3d 769 (citing *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798). However, "[t]he person with the right to possession need only

---

[3] As discussed above, Maine law espouses a contrary policy in the context of real property. *See* 14 M.R.S. § 6956. Not only does the possessor of land not owe a duty in negligence to the title owner for improvements to the land, but provided the statutory requirements are met, it is the title owner who owes the possessor the value of those improvements.

make a demand if the holder took the property rightfully . . . ." *Withers*, 1998 ME 164, ¶ 7, 714 A.2d 798. *Accord* Simmons, Zillman, & Gregory, *Maine Tort Law* § 6.09 at 132-33 (1999 ed.)

"Whenever a sale of goods would amount to conversion by the unauthorized seller, buying them will usually but not always commensurately constitute conversion by the buyer . . . . Purchasing goods . . . from a thief [is conversion]." Simmons, Zillman, & Gregory, *Maine Tort Law* § 6.03 at 112, 115. "The law in Maine is settled that a bona fide purchaser of personal property from one who has acquired the property tortiously, acquires no rights against the true owner, and is liable in conversion to the true owner without notice or demand." *Bacon v. Penney*, 418 A.2d 1136, 1140 n.3 (Me. 1980) (citing cases).

"[C]onversion requires an actual interference with the property owner's rights beyond a brief and ultimately-harmless withholding." *Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 17, 157 A.3d 769 (quoting *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 22, 48 A.3d 774). In determining whether an interference amounts to conversion, the court considers the following factors: the extent and duration of the actor's exercise of dominion or control; the actor's good faith; the extent and duration of the resulting interference with the other's right to control; the harm done; and the inconvenience and expense caused to the owner. *Id.* (citing *Lougee Conservancy*, 2012 ME 103, ¶ 22, 48 A.3d 774.).

The Court concludes that Mr. Reister has not established conversion in this case. Mr. Reister failed to meet his burden of persuasion because he offers no argument or authority for why the facts established at trial amounted to a conversion; in any event, the Court concludes that no conversion occurred here.

First, there was never a conclusion, in this Court or in a Michigan court, that anyone in Plaintiffs' chain of title acquired the Bertram "tortiously," that the vessel was "stolen," or that any

antecedent sale of the Bertram would have amounted to a conversion[4]—only that "the requirements of [Michigan's] Marine and Boat Storage Lien Act . . . were not complied with." (Michigan Judgment, Pl's Ex. 4.) This removes the case from the categorical rule of *Bacon*, 418 A.2d at 1140 n.3, and this Court declines to extend the rule to this case where title was improperly transferred merely because of a failure to comply with statutory lien foreclosure requirements.

Furthermore, the Court declines to conclude that Mr. Reister had the right to possession of the Bertram at the time of the alleged conversion.[5] Although Mr. Reister's rights in the Bertram were ultimately vindicated by the entry of the Michigan Judgment and the entry of this Judgment, from 2010 to 2012, when Plaintiffs were arguably "converting" the Bertram by improving it, they held legal title to the vessel. The language of the Michigan Judgment is prospective, not retroactive, in terms of identifying Mr. Reister as the "rightful owner of the watercraft." Mr. Reister's right to possess the Bertram vested no earlier than February 14, 2013, when the Michigan Judgment was entered. This was the year the Bertram won first place in the Lake Winnipesaukee Antique and Classic Boat Show; after that, it saw minimal use and by 2015 it was moved into storage. *See Estate of Barron*, 2017 ME 51, ¶ 17, 157 A.3d 769 ("harmless withholding" not a conversion).

Finally, the Court cannot conclude that the balance of the *Barron* factors show that it is more likely than not that the interference here amounted to a conversion, particularly where Mr. Reister offers no argument or authority in support of such a conclusion. Based on the facts found by the Court, Plaintiffs restored the vessel from derelict to award-winning condition. While Plaintiffs were clearly interfering with Mr. Reister's rights beyond a brief withholding between 2010 and 2012, it would be inaccurate to characterize Plaintiffs' work on the Bertram as harmful.

---

[4] Whether the Bertram was stolen, or whether anyone in Plaintiffs' chain of title acquired the Bertram tortiously, was not identified as an issue to be decided by this Court in any pleading or in the joint final pretrial statement. *See Town of Stonington*, 1999 ME 2, ¶ 15 n.3, 722 A.2d 1269.

[5] This issue was identified for judicial determination in the parties' joint final pretrial statement.

*See Barron*, 2017 ME 51, ¶ 17, 157 A.3d 769. Mr. Reister testified that he was unhappy with the restoration, particularly with the windshield and the replacement engines. Although the Court generally found Mr. Reister's testimony credible and believes that he did not approve of all the changes Plaintiffs made to the Bertram, to the extent that his testimony was meant to imply that the Bertram was "better" in the "before" photos of Plaintiffs' Exhibit 3 than in the "after" photos, his credibility is stretched past the breaking point. This also goes to the issue of damages. There can be no genuine dispute that the Bertram's value was significantly increased as a result of the Plaintiffs' labor—their purported "conversion"—from the time they bought it until it was placed in storage for the pendency of this lawsuit.[6]

The Court therefore concludes that Plaintiffs are not liable to Mr. Reister for conversion. Judgment will be entered in favor of Plaintiffs on Count II of Defendant's Counterclaim.

### c. UCC Filing

Mr. Reister's final Counterclaim count alleges that Plaintiffs negligently or intentionally filed a UCC financing statement on the Bertram in Michigan, that the financing statement constituted an illegal lien on the boat, and demands that the lien be removed. (Def's Countercl. ¶¶ 19-21.) The Court did not hear any testimonial evidence or argument related to this Counterclaim count. Based on the pleading, the Court assumes that Plaintiffs filed the financing statement in a manner akin to a "mechanic's lien" to secure payment for their renovations to the Bertram. The Court has denied them that relief in this Judgment, which is now *res judicata* as to that issue. If they have not already done so, the Court hereby ORDERS Plaintiffs to retract the financing statement they filed on the Bertram in Michigan.

---

[6] Mr. Reister suggests the reasonable rental value of the Bertram as a basis on which to calculate his damages for loss of use while the Bertram was in Plaintiffs' possession. However, Mr. Reister offered no admissible evidence as to the reasonable rental value of the Bertram. *See Ford Motor Co. v. Darling's,* 2014 ME 7, ¶ 47, 86 A.3d 35 ("[A]plaintiff seeking damages bears the traditional burden of proof by a preponderance of the evidence.").

15

d. Abuse of Process

In Defendant's trial brief, filed August 10, 2018, Mr. Reister argues that various actions undertaken by Plaintiffs in litigating this case amount to abuse of process. (Def's Trial Br. 8-13.) Mr. Reister did not allege abuse of process in his Counterclaim and never moved to amend his Counterclaim to add a count for abuse of process either before or after trial. *See Thomas v. Wilson*, 356 A.2d 737, 738 n.3 (Me. 1976) (citing M.R. Civ. P. 15(b)). It was not listed as an issue in the parties' joint final pretrial statement. *See Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 22, 770 A.2d 97. Under some circumstances, issues tried but not pled can be treated as if they were raised in the pleadings. *See* M.R. Civ. P. 15(b). However, there was no evidence or argument presented on this issue at trial. Plaintiffs' liability for abuse of process was thus never an issue before the Court.

Mr. Reister revisits the issue of abuse of process in his post-trial brief in the context of a request for attorney fees; however, the cases cited stand merely for the proposition that the Court in its discretion may award attorney fees as a sanction for egregious behavior. *Linscott v. Foy*, 1998 ME 206, ¶¶ 16-17, 716 A.2d 1017. The Court declines to do so in this case. The Court finds that both sides litigated this action zealously, appropriately, and professionally. Each party will pay its own fees in accordance with the "American rule." *See id.* ¶ 17 ("Because of the strictures of the well-established 'American Rule,' courts should exercise the inherent authority to award attorney fees as a sanction only in the most extraordinary circumstances.").

e. Storage Costs

In the Turnover Order, the Court ordered that "Defendant may move the Bertram to another location, including out of state, at his expense . . . . The issue of responsibility of past storage costs is reserved to be decided as part of the final resolution of the case." (Turnover Order ¶ 2.)

16

According to Mr. Reister's testimony and Defendant's Exhibit 18, the Bertram is currently subject to a storage lien of around $27,000, and Mr. Reister has been attempting to negotiate that charge with the storage yard since the entry of the Turnover Order.

On January 11, 2018, Mr. Reister's attorney sent an email to counsel for Plaintiffs asking if they would allow Mr. Reister to remove the Bertram from storage pending resolution of this case. Plaintiffs' counsel responded on January 23, 2018 that he would object to Mr. Reister moving the Bertram. Mr. Reister argues that therefore, based on Plaintiffs' refusal to allow the Bertram to be removed from storage and mitigate the amount of storage fees, Mr. Reister is entitled to damages in the amount of the storage fees accrued from at least January 23, 2018. Mr. Reister cites no authority for this argument. As a general proposition, this Judgment grants Mr. Reister title clear of any of Plaintiffs' claims, but subject to any other encumbrances, including the third-party lien claimed by the storage yard. The Court thus views Mr. Reister's request as invoking this Court's equitable powers and requesting an equitable apportionment of the storage costs based more in fairness than in law. Because he otherwise takes title to the Bertram subject to any third-party claims, Mr. Reister has the burden of persuading this Court to shift some portion of the storage yard's lien claim to the Plaintiffs.

First, based on Mr. Reister's reasoning, Plaintiffs would at most be responsible for storage costs accrued between January 23, 2018 and May 29, 2018. Mr. Reister's argument is premised on Plaintiffs' objection to Mr. Reister's moving the Bertram. As of May 29, 2018, Plaintiffs no longer objected, meaning Mr. Reister was free to remove the Bertram from storage and take it home to Michigan as of that date. Thus, the basis of Mr. Reister's argument can only apply to the four-month period between January 23 and May 29, 2018.

Under the circumstances of this case, the Court declines to order Plaintiffs to pay storage costs accrued between January 23 and May 29, 2018. Plaintiffs articulated a good-faith reason for their objection to Mr. Reister's moving the boat during that period. (*See* Pl's Mot. for Temp. Restr'g Order & Pl's Obj. to Mot. for Turnover Order, dated March 6, 2018.) Mr. Reister has not persuaded the Court that it would be unfair for him to be responsible for the storage costs that accrued during the relevant period. The fact that Plaintiffs later withdrew their objection, and that Mr. Reister ultimately prevailed against Plaintiffs in their claims against him for their improvements to the Bertram, is too thin a basis on which to conclude that it would be inequitable for Mr. Reister to take the Bertram subject to the full amount of the storage lien.

To be clear, this Judgment resolves the issue of ownership of the Bertram only as between Mr. Reister and Plaintiffs, in Mr. Reister's favor, and does not in any way affect any third-party claims, liens, or other encumbrances associated with the vessel. Mr. Reister takes title to the Bertram subject to any such encumberments.

## CONCLUSION

Based on the foregoing, the entry will be:

(1) Judgment is entered for Defendant on all counts of Plaintiffs' First Amended Complaint.

(2) Judgment is entered for Plaintiffs on counts I and II of Defendant's Counterclaim.

(3) Judgment is entered for Defendant on count III of Defendant's Counterclaim. Plaintiffs are ORDERED to retract the UCC financing statement filed on the Bertram in Michigan.

(4) Each side is responsible for its own costs and fees.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

18

Dated: 9/20/18

Richard Mulhern
Judge, Business and Consumer Court

19

STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         BUSINESS AND CONSUMER COURT
                                        LOCATION: PORTLAND
                                        DOCKET NO. BCD-CV-2018-01 ✓

PETER RITTMASTER, et al.,        )
                                 )
            Plaintiffs,          )
                                 )
      v.                         )         ORDER ON DEFENDANT'S
                                 )         MOTION TO STAY
HARRY L. RIESTER,                )
                                 )
            Defendant.           )

This matter is before the Court on Defendant Harry Reister's motion to stay. Plaintiffs opposed the motion and Mr. Riester filed both a reply and a supplement to his motion to stay. Pursuant to the discretion granted it by M. R. Civ. P. 7(b)(7), the Court chose to rule on the motion without hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is about the ownership of a 1970 Bertram Baron 28 watercraft (the "Bertram"). (Pl's Compl. ¶ 4.) Plaintiffs purchased the Bertram from Mr. Genick in Michigan, who had himself purchased it from Blue Lagoon Marina after Blue Lagoon foreclosed on its storage lien on the Bertram. (Pl's Compl. ¶¶ 9-13.) The original owner was Mr. Reister. (Pl's Compl. ¶ 5.) Mr. Reister filed suit in Michigan against Blue Lagoon, Mr. Genick, "John Doe" from Maine, and others, seeking title to the Bertram. (Pl's Compl. ¶¶ 24, 28.) Plaintiffs were never served. (Pl's Compl. ¶ 26.) Mr. Reister succeeded in negotiating a stipulation of dismissal with Blue Lagoon and Mr. Genick, and the Michigan court entered an order dismissing all defendants and declaring Mr. Reister the title owner of the Bertram. (Pl's Compl. ¶¶ 27-28.) Mr. Reister was able to use his Michigan judgment to obtain a certificate of title from the Michigan Secretary of

1

State. (Def's Mot. Stay ¶ 5.)

## STANDARD OF REVIEW

"The grant or denial of [a] stay rests in the sound discretion of the court." *State v. Brown*, 2014 ME 79, ¶ 32, 95 A.3d 82 (quoting *Cutler Assocs., Inc. v. Merrill Trust Co.*, 395 A.2d 453, 456 (Me. 1978)).

## DISCUSSION

Mr. Reister argues that a stay of this litigation is necessary "to allow Defendant to pursue his rights under Michigan law and enforce the Order and Certificate of Title in the Michigan Court that entered the Order." (Def's Mot. Stay ¶ 7.) Although Mr. Reister cites no legal authority in support of the granting of a stay, it can be inferred from his motion that he relies on the principle of comity. (Def's Mot. Stay ¶ 11.)

The principle of comity sometimes requires that a second lawsuit be stayed when a prior lawsuit is pending between the same parties. "Ordinarily, when a party has begun an action, it serves no sensible end to permit his adversary to appear as equitable actor and start the proceedings for an autonomous declaration . . . ." *Eastern Fine Paper, Inc. v. Garriga Trading Co.*, 457 A.2d 1111, 1113 (Me. 1982) (quotation marks omitted). *See also Jones v. York*, 444 A.2d 382, 384 (Me. 1982). For comity to apply, the first action must still be pending and involve the same subject matter, parties, and issues. *Id.* The appropriate remedy when the rule applies is a stay of the proceedings in the second action, or dismissal of the second action without prejudice. *Eastern Fine Paper, Inc.*, 457 A.2d at 1116.

The principle of comity does not warrant the granting of a stay in this case. Foremost, there is no pending litigation in Michigan. By its terms, the order entered in the Michigan litigation "[r]esolves the last pending claim and closes the Case." (Def's Supp. Mot. Stay, Ex. C

2

at 2.) Even if the Court were to entertain the argument that an enforcement action is a continuation of the Michigan litigation (*see* Def's Mot. Stay ¶ 11), the prior proceeding did not involve these same parties, as Plaintiffs were never served in the Michigan action. *See Jones*, 444 A.2d at 384. Furthermore, the issues in this case are different from those that were decided in the Michigan case, as Plaintiffs have asserted a claim to title to the Bertram grounded in principles of equity. (Pl's Compl. ¶¶ 33-34.) *See id.*

A hypothetical enforcement action brought in Michigan might be stayed for the pendency of this lawsuit based on principles of comity, but staying this lawsuit to allow that action to be brought stands comity on its head. *Id.* Put simply, Plaintiffs filed their Complaint here before Mr. Reister ever brought suit against them in Michigan. It would be antithetical to the rule of comity to stay this first action to compel Plaintiffs to defend against a future enforcement action in Michigan. *See id.*, 444 A.2d at 384-84 ("The doctrine of comity . . . [should be] applied to promote justice and equity . . . . It should not prevail where justice to the defendant does not reasonably require it, and where to allow it would work manifest injustice to plaintiffs.").

In sum, the principle of comity weighs against granting this motion to stay. Mr. Reister's motion to stay is therefore DENIED.

## CONCLUSION

Based on the foregoing it is hereby ORDERED:

That Defendant Harry Reister's motion to stay is DENIED.

The Clerk is requested to enter this Order on the docket by incorporating it by reference. M.R. Civ. P. 79(a).

3

Dated: __3/23/18__

_[signature]_

Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 3-26-18
Copies sent via Mail __ Electronically ✓

4

Peter Ritmaster,
and Shawn M. Tyler

v.

Harry L. Riester

**Plaintiffs**

Peter Ritmaster,

Nicholas Walsh, Esq.
and Shawn M. Tyler
*PO Box 7206*
*120 Exchange Street*
*Suite 202.*
*Portland, ME 04112-7206*

**Defendant**

Harry L. Riester

Micha Smart, Esq.
Bruce Hochman, Esq.
Ernest Babcock. Esq.
*PO Box 15235*
*100 Middle St*
*Portland, ME 04112-5235*